<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1397**

SUPER DUPER, INCORPORATED, d/b/a Super Duper Publications,

        Plaintiff - Appellant,

    v.

MATTEL, INCORPORATED, a Delaware Corporation,

        Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Greenville. Henry F. Floyd, District Judge. (6:05-cv-01700-HFF)

Argued: March 24, 2010          Decided: June 10, 2010

Before SHEDD and AGEE, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Thomas Edward Vanderbloemen, GALLIVAN, WHITE & BOYD, PA, Greenville, South Carolina, for Appellant. Thomas Henderson Dupree, Jr., GIBSON, DUNN & CRUTCHER, LLP, Washington, D.C., for Appellee. **ON BRIEF:** W. Howard Boyd, Jr., Jennifer E. Johnsen, Adam C. Bach, GALLIVAN, WHITE & BOYD, PA, Greenville, South Carolina; Steven R. LeBlanc, DORITY & MANNING, P.A., Greenville, South Carolina, for Appellant. Dace A. Caldwell, GIBSON, DUNN & CRUTCHER, LLP, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mattel, Incorporated ("Mattel") opposed the registration of several of Super Duper, Incorporated's ("Super Duper") trademarks in the United States Patent and Trademark Office ("USPTO") based on their alleged infringement of Mattel's pre-existing marks. After the parties' efforts to reach a settlement failed, Super Duper filed a declaratory judgment action in the United States District Court for the District of South Carolina, requesting the court rule that its trademarks did not violate Mattel's intellectual property rights. Mattel counterclaimed, alleging that Super Duper had engaged in trademark infringement, trademark dilution, unfair competition, and fraud upon the USPTO.

After a week-long trial, a jury found that Super Duper's use of seven trademarks infringed upon and/or diluted four of Mattel's preexisting marks and awarded Mattel $400,000 in damages.[1] Post-trial, Super Duper renewed its motion for judgment as a matter of law and Mattel moved for a permanent

---

[1] The jury concluded that Super Duper's use of its SEE IT! SAY IT!, SAY AND SING, FISH AND SAY, FISH & SAY, SORT AND SAY, SORT & SAY, and SAY AND SORT trademarks infringed Mattel's SEE 'N SAY, SEE 'N SAY JUNIOR, SEE 'N SAY BABY, and THE FARMER SAYS marks. The jury also concluded that Super Duper's use of its SEE IT! SAY IT!, SAY AND SING, FISH AND SAY, FISH & SAY, SORT AND SAY, SORT & SAY, and SAY AND SORT trademarks was likely to dilute Mattel's famous SEE 'N SAY and THE FARMER SAYS marks.

injunction, order of cancellation, increased profits, and an award of attorneys' fees and costs. The district court denied Super Duper's motion but granted those of Mattel by increasing the damages award to $999,113 and providing Mattel with $2,643,844.15 in attorneys' fees. Super Duper filed a timely appeal and we have jurisdiction under 28 U.S.C. § 1291.

On appeal, Super Duper challenges (1) the district court's denial of its motion for judgment as a matter of law, (2) multiple instructions submitted to the jury, and (3) the district court's award of increased profits and attorneys' fees. Our review of the record reveals no error requiring reversal. Accordingly, we affirm the judgment of the district court.

I.

We review de novo Super Duper's initial argument that the district court erred in denying its motion for judgment as a matter of law on Mattel's claims for trademark infringement and trademark dilution. See Dotson v. Pfizer, Inc., 558 F.3d 284, 292 (4th Cir. 2009). Judgment as a matter of law is appropriate only when "there is no legally sufficient evidentiary basis for a reasonable jury to find for the non-moving party." Int'l Ground Transp., Inc. v. Mayor & City Council of Ocean City, 475 F.3d 214, 218 (4th Cir. 2007) (quotation omitted). In considering the evidence presented at trial, we do "not make

3

credibility determinations or weigh the evidence," as "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (quotation omitted).

After reviewing the record in the light most favorable to Mattel and disregarding all evidence favorable to Super Duper "that the jury [was] not required to believe," id. at 150-51, we cannot say that the evidence "supports only one reasonable verdict." Dotson, 558 F.3d at 292 (quotation omitted). The evidence presented at trial was sufficient for the jury to conclude that the simultaneous use of Mattel's and Super Duper's marks would (1) create a likelihood of confusion in the mind of an "appreciable number of ordinarily prudent purchasers" regarding the "source of the goods in question," Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 127 (4th Cir. 1990) (quotations omitted), and (2) "'impair[] the distinctiveness of [Mattel's] famous mark[s].'" Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC, 507 F.3d 252, 264 (4th Cir. 2007) (quoting 15 U.S.C. § 1125(c)(2)(B)).

In regard to trademark infringement, Super Duper argues, inter alia, that Mattel failed to offer any evidence of actual confusion over a significant period of concurrent use of the marks and that there are many distinctions between its business

4

and products and those of Mattel. We find these arguments unpersuasive. While it is true that a lack of "evidence of actual confusion over a substantial period of time" may create "a strong inference" of no likelihood of confusion, CareFirst of Maryland, Inc. v. First Care, P.C., 434 F.3d 263, 269 (4th Cir. 2006), the absence of such proof does not preclude a party from proving a likelihood of confusion based on a compilation of other evidence. It is, after all, "well established that no actual confusion is required to prove a case of trademark infringement."[2] Louis Vuitton, 507 F.3d at 263.

Furthermore, under these facts, the inference to be drawn from Mattel's lack of evidence of actual confusion was a matter properly submitted to the jury. See Reeves, 530 U.S. at 150 (noting that gleaning "inferences from the facts" is a "jury function[]"). Super Duper places great emphasis on the fact that its marks were in use for five-to-nine years before the start of trial in 2008, and that Mattel produced no evidence of

---

[2] See also CareFirst, 434 F.3d at 269 ("[P]roof of actual confusion is not necessary to show a likelihood of confusion . . . ."); Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 463 (4th Cir. 1996) ("[E]vidence of actual confusion is unnecessary."); Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 933 (4th Cir. 1995) ("[T]his Court has emphasized that a trademark owner need not demonstrate actual confusion."); AMP Inc. v. Foy, 540 F.2d 1181, 1186 (4th Cir. 1976) ("[A]ctual confusion is not an essential element in establishing a likelihood to confuse . . . .").

5

actual confusion during that time. Mattel, however, first challenged Super Duper's use of its trademarks in the USPTO in 2004. The jury could reasonably conclude that Mattel's administrative challenge affected the manner in which Super Duper used and publicized its marks during the relevant period.

We also reject Super Duper's assertion that the jury should have weighed additional likelihood-of-confusion factors differently, such as differences in the parties' products, marks, and facilities. Because the likelihood-of-confusion analysis "depends on varying human reactions to situations incapable of exact appraisement," we treat the likelihood of confusion as an "inherently factual issue that depends on the facts and circumstances in each case." Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 933 (4th Cir. 1995) (quotations omitted). As a "cross-section of consumers," the jury is particularly "well-suited to evaluating whether an 'ordinary consumer' would likely be confused." Anheuser-Busch, Inc. v. L&L Wings, Inc., 962 F.2d 316, 318 (4th Cir. 1992)." Our function on appeal is not to "weigh the evidence," but to determine if the "record as a whole" supports the jury's verdict. Reeves, 530 U.S. at 150-51. We conclude that Mattel met that standard.

Super Duper's arguments in relation to Mattel's trademark dilution claims fare no better, as they primarily focus on the

6

lack of survey evidence and expert testimony as to the likelihood of dilution. Our precedent does not support the proposition that the successful prosecution of a trademark dilution claim mandates the production of survey evidence or expert testimony. See Louis Vuitton, 507 F.3d at 266 ("To determine whether a junior mark is likely to dilute a famous mark through blurring, the TDRA directs the [trier of fact] to consider all factors relevant to the issue, including six factors that are enumerated in the statute . . . ."). Of course, such evidence may prove helpful to the jury, but it is not required. Cf. id. at 266 ("Not every factor will be relevant in every case, and not every blurring claim will require extensive discussion of the factors.").

As we have explained, the jury was well situated to make the factual determination that Mattel's marks were "famous," that sufficient similarity existed between Super Duper's and Mattel's marks, and that this association was likely to impair the distinctiveness of Mattel's "famous" marks. See id. at 264-65. The Trademark Dilution Revision Act ("TDRA") requires nothing more, see 15 U.S.C. § 1125(c), and we are prohibited from reweighing the evidence or drawing inferences from the facts. See Reeves, 530 U.S. at 150.

II.

We now turn to Super Duper's claims that multiple instructions submitted to the jury failed to correctly state the law and require reversal of the judgment. "[I]t is well settled that a trial court has broad discretion in framing its instructions to a jury." Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 484 (4th Cir. 2007). We accordingly review the district court's jury instructions only "for abuse of discretion," although we "review de novo claims that the jury instructions failed to correctly state the law." Id. Affirmance is required so long as the instructions given by the district court, "taken as a whole," "adequately state the controlling law." Id. (quotation omitted). In other words, we will reverse based on "error in jury instructions only if the error is determined to have been prejudicial, based on a review of the record as a whole." Abraham v. County of Greenville, 237 F.3d 386, 393 (4th Cir. 2001) (quotation omitted).

Super Duper first contends that the district court's instructions eliminated Mattel's burden of proving a likelihood of confusion by a preponderance of the evidence. We disagree. While the district court erred in instructing the jury that "[a]ny doubt regarding the outcome of the likelihood of

confusion analysis must be resolved in favor of Mattel,"[3] Joint Appendix ("J.A.") at 2001, the jury instructions as a whole adequately and correctly stated the controlling law.

For example, the district court informed the jury that "Mattel ha[d] the burden of proving" the elements of a trademark infringement claim "by a preponderance of the evidence" and the jury was instructed to find in Super Duper's favor if "Mattel failed to prove any of" the requisite elements of a trademark infringement claim. Id. at 1998. The special verdict form also specifically asked the jury to determine whether "Mattel ha[d] proven by a preponderance of the evidence that any of Super Duper's trademarks . . . infringe[d] Mattel's trademarks." Id. at 2034. Super Duper is accordingly unable to establish that the district court's error was "prejudicial" in light of the "record as a whole."[4] Abraham, 237 F.3d at 393 (quotations omitted).

---

[3] As the Supreme Court explained in KP Permanent Make-Up, Inc. v. lasting Impression I, Inc., 543 U.S. 111 (2004), the defendant in a trademark-infringement suit "has no free-standing need to show confusion unlikely" and is merely required "to leave the factfinder unpersuaded that the plaintiff has carried its own burden on that point." 543 U.S. at 120-21.

[4] In light of our opinion in AMP Inc. v. Foy, 540 F.2d 1181 (4th Cir. 1976), we also reject Super Duper's challenge to the district court's instruction that if the jury found Mattel's trademarks to be strong marks, "Super Duper's trademarks (as the latecomer) must be substantially different from Mattel's trademarks to avoid a finding of infringement." J.A. at 2012; (Continued)

9

Next, Super Duper argues the district court erred in instructing the jury that a lack of "evidence of actual confusion" is a "factor [that] is neutral and does not favor either party." J.A. at 2013. We have already recognized that whether there was a significant period of concurrent use of Super Duper's and Mattel's marks without any evidence of actual confusion was a factual matter best left to the jury's determination. See Reeves, 530 U.S. at 150 (recognizing that "the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Accordingly, the district court did not abuse its discretion in instructing the jury that an absence of evidence of actual confusion, in and of itself, was a neutral factor.[5]

---

see AMP Inc., 540 F.3d at 1187 (citing "a respectable body of authority" that holds that "the second comer has a duty to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer") (emphasis added) (quotation omitted).

[5] The district court did not abuse it discretion in refusing to grant Super Duper's request for a sophisticated user instruction, as Sharon Webber, the co-owner of Super Duper, testified at trial that Super Duper sold its goods to the "[v]ery general public." J.A. at 675. Nor did the district court abuse its discretion in instructing the jury that the "ultimate consumers of Super Duper's products" were "children." Id. at 2013; see Lyons Partnership, L.P. v. Morris Constumes, Inc., 243 F.3d 789, 802 (4th Cir. 2001) (holding that "the similarity of child-oriented works must be viewed from the perspective of the child audience for which the products were intended") (quotation omitted).

See AMP Inc., 540 F.2d at 1186 ("[A]ctual confusion is not an essential element in establishing a likelihood to confuse . . . .").

Super Duper also contends that several aspects of the district court's instructions suggested that the jury could impose liability based solely on the similarity of Super Duper's and Mattel's trademarks. But see Commc'ns Satellite Corp v. Comcet, Inc., 429 F.2d 1245, 1252 (4th Cir. 1970) ("Resemblance of the marks is not alone sufficient to establish the likelihood of confusion."). On appeal, however, "we do not view a single instruction in isolation; rather we consider whether taken as a whole and in the context of the entire charge, the instructions accurately and fairly state the controlling law." United States v. Rahman, 83 F.3d 89, 92 (4th Cir. 1996). We conclude that, in this case, the instructions given to the jury fairly state the controlling law.

For example, the district court's instruction regarding the elements of a trademark infringement claim specified seven factors the jury should consider in reaching its verdict: (1) the strength of Mattel's trademarks, (2) the similarity of Mattel's and Super Duper's trademarks, (3) the similarity of the goods that the trademarks identify, (4) the similarity of the parties' business facilities, (5) the similarity of the parties' advertising, (6) Super Duper's intent in selecting its

11

trademarks, and (7) any actual confusion between Super Duper's and Mattel's products or trademarks. Only the second factor related to "the similarity of Mattel's trademarks and Super Duper's trademarks."[6] J.A. at 2000. Furthermore, the court clearly explained that "[t]he presence or absence of any particular factor . . . should not necessarily resolve whether there is a likelihood of confusion" because the jury "must consider all [of the] relevant evidence." Id.

Moreover, the district court's specific instruction on the factor relating to the similarity of the parties' trademarks clarified that "[t]rademarks are not to be evaluated in a side by side comparison test," such as "a meticulous comparison in court." Id. at 2008. Rather, "[i]t is the overall impression created by the trademark from the ordinary consumer's cursory observation in the marketplace that will or will not lead to a likelihood of confusion." Id. (emphasis added). It was thus made clear to the jury that all relevant market-related factors

---

[6] While the district court erred in giving an instruction that fleetingly referred to the "similarity" between Super Duper's and Mattel's trademarks, J.A. at 2000, Super Duper failed to lodge an objection on this basis in the district court. Our review is consequently only for plain error, see United States v. Jeffers, 570 F.3d 557, 564 n.4 (4th Cir. 2009), and Super Duper cannot establish that this overlooked comment caused it prejudice. See United States v. Stitt, 250 F.3d 878, 884 (4th Cir. 2001) (noting that "actual prejudice [is] required by the third prong of plain-error review").

12

must be taken into account in determining whether marks are similar and whether a likelihood of confusion ultimately exists.

That the district court instructed the jury that "similarities" in the parties' marks "weigh more heavily than differences," J.A. at 2008, does not alter our analysis. Although we have stated that, in assessing the similarity of marks, courts do not "confine their scrutiny merely to similarities," Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc., 130 F.3d 88, 94 (4th Cir. 1997), the district court's instruction did not remove the marks' dissimilarities from the jury's consideration. Indeed, the jury's search for similarities between Super Duper's and Mattel's marks would necessarily reveal the marks' dissimilarities, as similarity and dissimilarity are but two sides of the same coin.

Super Duper's argument as to the district court's mark-pairings instruction similarly lacks merit. The instruction in question simply stated that "the mere presence of a house mark, e.g., the name Super Duper, does not avoid a finding of likelihood of confusion as between two marks." Id. at 2008. In short, this instruction correctly explained that placement of Super Duper's house mark on its product packaging did not ipso facto foreclose the possibility that a likelihood of confusion existed between Super Duper's trademarks and those of Mattel. See CareFirst, 434 F.3d at 271-72 (recognizing that the effect

13

of a mark pairing depends on the strength of the allegedly infringed mark, as well as any "differences in the public presentations of the[] marks" that would "significantly reduce the likelihood of confusion").

## III.

Finally, Super Duper contests the district court's award of increased profits and attorneys' fees to Mattel. Super Duper's argument in this regard is predicated on the section of the TDRA that specifies that a plaintiff prevailing under the likelihood of dilution standard may only recoup profits, damages, costs, and attorneys' fees if "the mark . . . that is likely to cause dilution by blurring . . . was first used in commerce by the person against whom [relief] is sought after October 6, 2006." 15 U.S.C. § 1125(c)(5)(A). Although Super Duper is correct that its trademarks were in use before October 6, 2006, Super Duper failed to raise anything remotely resembling this argument in its Rule 50(a) motion for judgment as a matter of law. See Exxon Shipping Co. v. Baker, 128 S. Ct. 2605, 2617 n.5 (2008) ("A motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury."). We accordingly review this issue only for plain error. See Price v. City of Charlotte, 93 F.3d 1241, 1248-49 (4th Cir. 1996).

14

Under the facts of this case, we decline to exercise our discretion to correct the error.[7] See Olano, 507 U.S. 725, 732 (1993) (noting that "the decision to correct [a] forfeited error [is] within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error 'seriously affect[s] the fairness integrity or public reputation of judicial proceedings.'" (quoting United States v. Young, 470 U.S. 1, 15 (1985))). The award of profits and attorneys' fees and costs in this case was independently justified by the jury's conclusion that Super Duper's use of seven trademarks infringed four of Mattel's preexisting marks. See 15 U.S.C. §§ 1117(a) & 1125(a).

We recognize that the jury awarded no damages based on its finding of trademark infringement. But the award of $999,113 in lost profits now at issue was made by the district court, rather than the jury. Section 1117(a) specifically provides that, in cases like the one currently before us in which a plaintiff establishes trademark infringement under § 1125(a), "[i]f the court . . . find[s] that the amount of the recovery based on profits is either inadequate or excessive the court may in its

---

[7] See also Corti v. Storage Tech. Corp., 304 F.3d 336, 341 (4th Cir. 2002) ("Before we can exercise our discretion to correct an error not raised below in a civil case, at a minimum, the requirements of United States v. Olano, 507 U.S. 725 (1993), must be satisfied.").

15

discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." In this case, the district court found the jury's award of $400,000 in lost profits inadequate and increased the award to $999,113, the amount of lost profits Mattel's expert testified was attributable to Super Duper's seven infringing marks.

Super Duper has simply failed to establish that the district court's award of lost profits would have differed had it not considered the jury's finding of trademark dilution. Accordingly, we decline to exercise our discretion to correct the district court's error in regard to the award of profits under the TDRA.[8] See Stitt, 250 F.3d at 884 (noting that "actual

---

[8] We reject Super Duper's contention that the district court erred in increasing Mattel's award of lost profits. The district court's ruling in this regard is consistent with the equitable factors laid down in Synergistic International, LLC v. Korman, 470 F.3d 162, 175 (4th Cir. 2006), and does not constitute an abuse of discretion. See Metric & Multistandard Components Corp. v. Metric's, Inc., 635 F.2d 710, 715 (8th Cir. 1980) ("[T]he district court is given broad discretion to award the monetary relief necessary to serve the interests of justice . . . ."). Nor are we persuaded that the court erred in failing to put a more restrictive time limitation on Mattel's award of lost profits. Indeed, Super Duper's reliance on our opinion in Lyons Partnership, L.P. v. Morris Costumes, Inc., 243 F.3d 789 (4th Cir. 2001) is misplaced. Although Lyons established that "the doctrine of laches may be applied to equitable claims brought under the Lanham Act," 243 F.3d at 799 (emphasis omitted), Mattel did not unreasonably delay in instituting its Lanham Act claims; therefore, the doctrine of estoppel by laches does not apply. See What-A-Burger of Va., Inc. v. Whataburger, Inc., 357 F.3d 441, 449 (4th Cir. 2004) ("Indeed, the key question, for purposes of estoppel by laches, is not simply (Continued)

16

prejudice [is] required by the third prong of plain-error review") (quotation omitted); see also United States v. Robinson, 460 F.3d 550, 557 (4th Cir. 2006) ("[A]n appellant on plain error review bears the burden of persuasion with respect to prejudice.").

We further conclude that the district court did not err in determining that this was an "exceptional case" thus rendering the award of attorneys' fees appropriate under 15 U.S.C. § 1117(a). The district court adopted the reasoning set forth in Mattel's petition for attorneys' fees in concluding that this case was "exceptional." In tandem with the district court's own observation that the "jury considered . . . overwhelming evidence of [Super Duper's] wrongdoing and determined that it both infringed and intentionally diluted certain of [Mattel's] marks," J.A. at 2708, the reasons stated in Mattel's attorneys' fees petition are sufficient to uphold the district court's ruling that this was an "exceptional case." See Retail Servs., Inc. v. Freebies Publ'g, 364 F.3d 535, 550 (4th Cir. 2004) (recognizing that an "exceptional case" is "one in which the defendant's conduct was malicious, fraudulent, willful or deliberate in nature" (quotation omitted)).

---

whether there has been some delay, but whether that delay was unreasonable.") (emphasis in original).

17

Because Super Duper failed to preserve its objections to the specific billing items it contests on appeal and/or to cite to any portion of the record demonstrating that Mattel, in fact, recouped the associated attorneys' fees, we further hold that the district court did not abuse its discretion in granting Mattel's request for attorneys' fees in the amount of $2,643,844.15. See Am. Reliable Ins. Co. v. Stillwell, 336 F.3d 311, 320 (4th Cir. 2003) ("[W]e review a district court's decision awarding or denying attorney's fees and costs for abuse of discretion."). Super Duper has simply "provided us with no [valid] basis . . . to discern the degree to which it believes the district court abused its discretion," Jean v. Nelson, 863 F.2d 759, 772 (11th Cir. 1988), and "[w]e will not make arguments for [a party] that it did not make in its briefs." O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1257 n.1 (10th Cir. 2001) (citing Fed. R. App. P. 28(a)(9)(A)). Accordingly, we find Super Duper's "argument without evidence unpersuasive, and conclude that the district court acted within its discretion in approving" the attorneys' fees "described in the evidence before it." Gray v. Lockheed Aeronautical Sys. Co., 125 F.3d 1387, 1389 (11th Cir. 1997); see also Norman v. Hous. Auth. of the City of Montgomery, 836 F.2d 1292, 1301 (11th Cir. 1988) ("As the district court must be reasonably precise in excluding

hours thought to be unreasonable or unnecessary, so should be the objections and proof from fee opponents.").

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED